THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH LITTLE, Defendant-Appellant.

(No. 59152;

First District (4th Division)—April 10, 1974.

Paul Bradley, Deputy Defender, of Chicago (Brenda E. Richey, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda West Conley, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Keith Little, was indicted for the murder of Gregory Geiren. After waiving his right to a trial by jury, he was found guilty in a bench trial and sentenced to a term of 30 to 90 years. On appeal, appellant contends that the State failed to prove him guilty beyond a reasonable doubt, that he was denied equal protection of the law, and that the court erred by setting a sentence that was excessive.

At trial, the State's first witness was Ceola Geiren, mother of the deceased. She testified that, at approximately 5:20 A.M. on July 11, 1972, she placed her purse inside the family car and then returned to her home, located a few doors away. Upon returning to the car a few minutes later, she saw Keith Little and another man remove the purse from the car and walk away. About 45 minutes later, Mrs. Geiren and two police officers confronted the defendant who, according to Mrs. Geiren, swore at her when she accused him of theft. No complaint was filed.

Mrs. Geiren met with the defendant and his father at approximately 10:15 that same evening. Mrs. Geiren's testimony was that she asked the defendant whether he knew her family and, if he did not, why would he "pick" on her. The defendant's father asked him, "Don't you hear her talking to you?" The defendant replied, "No, and I don't want to know any damn members of that family, because she thinks her boys are better than anybody." The defendant slammed the door and left.

The State's next witness was Cedric Geiren, age 18, the brother of the deceased. Cedric Geiren testified that, between 5 and 6 P.M. on July 12, 1972, he encountered the defendant with four other youths and asked about the theft of his mother's purse. According to the witness, the defendant threw a punch at him without saying a word. A fist fight between the two young men ensued, after which the defendant followed the witness home. Gregory Geiren arrived a few minutes later and soon a fight erupted between him and Keith Little. After a few minutes, the defendant ran away. Cedric Geiren stated that he did not recall defendant saying anything as he left but a cousin of the deceased, David Timms, testified that the defendant said, "Wait right here until I get back." The witnesses claimed that the second fight occurred around 7:30 P.M. on July 12, 1972.

A neighbor, Nathaniel Satchell, testified that he saw Little and several other youths walk toward the Geiren house around 10 or 11 P.M. on July 12, 1972. Satchell stated that he observed the youths from a distance of 15 to 20 feet and that the defendant and two of his companions carried objects that "looked like" rifles. Satchell testified further that he proceeded past the Geiren residence to a house located three doors away and sat there on the porch with his back turned to the street. About 5 minutes later, according to Satchell, he heard a shot that was "something like a firecracker," turned around, and saw the defendant and several other youths run down the street. Satchell then walked over to the Geiren house and observed Gregory Geiren, who had been shot, lying in the doorway.

During cross-examination, Satchell testified that he wasn't sure the object carried by the defendant was a rifle and that he wasn't sure where the firecracker-like sound came from. The State claimed surprise and was granted leave to call Satchell as an adverse witness. The State then introduced Satchell's statement, given to police officers on July 13, 1972, that he saw a gun in the defendant's hand and that the gun "looked like a .22 rifle." On recross-examination, Satchell's explanation of the discrepancy between his two statements was that he said he "wasn't too sure" so that "they won't think I was lying about it."

Robert E. Shanahan, assigned to Area 5 Homicide of the Chicago

Police Department on July 12, 1972, testified that a .22-caliber bullet, the same type that would be fired from a .22-caliber rifle, was recovered from the body of Gregory Geiren.

Robert McClanahan of the Chicago Police Department, Area 5 Homicide, testified that the defendant, accompanied by his father and another man, came to the police station on July 13, 1972, turned himself in, and was arrested for the fatal shooting of Gregory Geiren.

On the basis of the above evidence, the trial judge denied defendant's motion for a directed verdict at the close of the State's case. The defendant then rested his case, and the court found him guilty of murder.

The defendant contends, on appeal, that the circumstantial evidence adduced at trial failed to prove him guilty beyond a reasonable doubt. He argues that the State presented little evidence of events surrounding the death other than his dispute with the Geirens and that the testimony of the only witness in the vicinity of the shooting was neither positive nor credible.

■■ To support a conviction based on circumstantial evidence, it is essential that the facts proved be not only consistent with defendant's guilt, but they must be inconsistent with any reasonable hypothesis of innocence. (*People v. Murdock* (1971), 48 Ill.2d 362, 367, 270 N.E.2d 21, 24; *People v. Branion* (1970), 47 Ill.2d 70, 77, 265 N.E.2d 1, 5.) However, the trier of fact is not required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt (*People v. Owens* (1962), 23 Ill.2d 534, 538, 179 N.E.2d 630, 632; *People v. Russell* (1959), 17 Ill.2d 328, 331, 161 N.E.2d 309, 311); and the trier of fact does not have to disregard the inferences that flow normally from the evidence. *People v. Hayes* (1972), 4 Ill.App.3d 997, 1000, 282 N.E. 777, 779; *People v. Brown* (1963), 27 Ill.2d 23, 26, 187 N.E.2d 728, 730; *People v. Russell* (1959), 17 Ill.2d 328, 161 N.E.2d 309.

After reviewing the record in this case, we are of the opinion that the web of circumstantial evidence woven by the State was strong enough to support the conviction of the defendant. The State's evidence showed that the deceased's mother saw the defendant remove her purse from her car on July 11, 1972; that the defendant exhibited hostility toward the Geiren family when Mrs. Geiren confronted him about the purse on the evening of July 11; that he fought with Cedric Geiren on July 12, 1972; and that the defendant fought with the deceased on the same day that the shooting incident occurred. David Timms testified that he heard the defendant threaten Georgory Geiren. Nathaniel Satchell testified that he saw the defendant walk toward the Geiren

residence a few minutes before the shooting, that the defendant was armed with a rifle, and that two of the youths accompanying defendant were also carrying rifles.

In *People v. Hayes* (1972), 4 Ill.App.3d 997, 282 N.E.2d 777, the defendant, standing in a group consisting of approximately 10 youths, was observed with a weapon immediately before the shooting. The complaining witness testified that she was walking away from the defendant with her back to him and did not know who shot her. The court found that the "reasonable inferences to be drawn from her narration of the events surrounding the shooting was that she was shot by the defendant." Similarly, we find here that the narration of events by the State's witnesses support the reasonable inference that the defendant shot Gregory Geiren.

■■ The appellant argues that the trial judge erred in assessing the credibility of Nathaniel Satchell and notes that Satchell was not as definite at trial as he had been at the preliminary hearing regarding the weapon carried by the defendant. However, even if the trial judge believed that the witness was not being fully candid on this issue, he was not required to reject Satchell's testimony *in toto. People v. Young* (1973), 11 Ill.App.3d 609, 615, 297 N.E.2d 298, 302.

■■ We will not disturb the trial court's determination of the credibility and weight to be given to the testimony of the witnesses unless it is palpably erroneous. (*People v. Arndt* (1972), 50 Ill.2d 390, 280 N.E.2d 230; *People v. Ostrand* (1966), 35 Ill.2d 520, 532, 221 N.E.2d 499, 507.) Our review of the record shows that there was adequate evidence to support the trial court's finding of guilty.

The second issue raised by the defendant is that he was denied equal protection of the law in that the Juvenile Court Act at that time applied to males under the age of 17 and females under the age of 18. (Ill. Rev. Stat. 1971, ch. 37, par. 702—7.) The defendant was 17 years old when the offense was committed.

■■ We find that the defendant was not denied equal protection of the law. In *People v. Pardo* (1970), 47 Ill.2d 420, 265 N.E.2d 656, the Illinois Supreme Court found that age and differences between the sexes formed a proper basis for legislative classification so that the provision did not deny the accused equal protection of the law. This position was reiterated by the court in *People v. McCalvin* (1973), 55 Ill.2d 161, 167-8, 302 N.E.2d 342, 346, where Mr. Justice Schaefer stated:

> "We therefore hold that section 2—7 of the Juvenile Court Act did not violate the equal protection clause. We adhere to the conclusion we reached in *People v. Pardo* (1970), 47 Ill.2d 420,

265 N.E.2d 656, appeal dismissed for want of a *substantial Federal question, Pardo v. Illinois* (1971), 402 U.S. 992, 29 L.Ed.2d 158, 91 S.Ct. 2179.

The Supreme Court of Illinois again passed on this issue in *People v. Ellis*, No. 45745, March Term, 1974, wherein Mr. Justice Goldenhersh said:

"Defendant, Delbert Ellis, was indicted in the circuit court of Macon County on one count of forgery and two counts of burglary. He entered a plea of guilty to each count, his petition for probation was denied and he was sentenced to three concurrent terms of 2 to 6 years in the penitentiary. The appellate court, holding that section 2—7(1) of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—7(1)) was unconstitutional, reversed the convictions (10 Ill.App.3d 216) and we granted the People's petition for leave to appeal as a matter of right under Rule 317.50 Ill.2d R. 317.

At the time the offenses were committed and when sentenced, defendant was 17 years of age.

\* \* \*

\* \* \* [T]he failure to consider defendant eligible for treatment as a minor under its provisions did not deprive him of equal protection of the laws.

For the reasons stated the judgment of the appellate court is reversed and the judgment of the circuit court of Macon County is affirmed."

A similar conclusion was reached by the Appellate Court for the First District in *People v. Good* (1974), 18 Ill.App.3d 374.

The court found defendant guilty of murder and, after a hearing in aggravation and mitigation, sentenced him to a term of 30 to 90 years. The defendant's final argument is that the sentence is excessive and should be reduced pursuant to authority granted this court by Supreme Court Rule 615(b)(4). Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)(4).

In *People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673, the supreme court held that, where it is contended that punishment imposed in a particular case is excessive, the court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of the Illinois constitution. The court further noted that the power to reduce sentences imposed by trial courts "should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the

course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals."

■■ Here, the trial judge imposed a sentence within the limits established by the legislature since murder is punishable by any indeterminate term with a minimum of 14 years. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1 (b).) In view of the seriousness of the offense, we do not find that the trial court abused its discretion.

If a sentence is within the trial court's discretion, and is warranted, it should not be modified on review. (*People v. May* (1971), 132 Ill. App.2d 766, 270 N.E.2d 440; *People v. Smith* (1969), 105 Ill.App.2d 14, 245 N.E.2d 13; *People v. Brower* (1970), 124 Ill.App.2d 356, 260 N.E.2d 463.) Under the facts and circumstances, therefore, we do not believe that we would be justified in modifying the sentence.

Accordingly, the conviction and sentence in this cause is affirmed.

Affirmed.

ADESKO, P. J., and DIERINGER, J., concur.